IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON R. SULLIVAN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN JOHN DOE, OFFICER BROADDUS, OFFICER WILSON, THE CITY OF PHILADELPHIA, and MARCY BOSTWICK, | : | NO. 07-2092 |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

FILED

AUG 29 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

BUCKWALTER, S. J.                                      August 28, 2008

Currently pending before the Court is the Motion of Defendants City of Philadelphia, Police Officer Tyrone Broaddus, Jr. and Police Officer Alexander Wilson for Summary Judgment and Plaintiff Sharon R. Sullivan's Response thereto. For the reasons which follow, the Motion is granted.

## I.   SUMMARY OF UNDISPUTED FACTS

During the period relevant to this dispute, Plaintiff was a forty-nine year old woman. (Defs.' Mem. Supp. Mot. Summ. J., Ex. I, Bates No. 18.) She attended Columbia University in New York for three years, but ultimately obtained her bachelor's degree from Temple University in 2001. (Id. Ex. K.) She has worked in various art galleries and as a Spanish translator. (Id.)

Plaintiff was arrested at her home at 6802 Lincoln Drive, Philadelphia, PA, on June 19, 2004, at 2:03 p.m., by Defendant Police Officers Broaddus and Wilson. (Id. Ex. B.) The arrest was based, among other reasons, on her violation of a First Judicial District of Pennsylvania

Protection from Abuse Order.[1] (Id.) Plaintiff's domestic partner of fifteen years, Barbara Chandler, originally called the police and informed them that Plaintiff was trying to gain entry to the house by ripping the screen to the door of the sunporch and breaking out the windows to the doors that lead to the dining room. (Id.; Pl's. Mem. Opp. Summ. J., Ex. 1 ¶ 2.) When Officers Broaddus and Wilson arrived, Ms. Chandler informed them that Plaintiff was suffering from bipolar disorder. (Pl's. Mem. Opp. Summ. J., Ex. 1 ¶ 4.) At the time Plaintiff was arrested, she was in a manic state and not able to control her actions. (Defs.' Mem. Supp. Mot. Summ. J., Ex. N.) Plaintiff informed the officers that the house she was allegedly burglarizing belonged to her – a fact of which they were already aware having responded to calls to her property on thirty-nine previous occasions. (Pls.' Mem. Opp. Summ. J., Ex. 1 ¶ 6.)

On June 20, 2004, Plaintiff was charged with burglary, criminal trespass, contempt-violation of a court order, criminal mischief and harassment. (Id. Ex. F.) The same day, Bail Commissioner Dwain E. Hill certified Plaintiff as a possible "#302" commitment with the further proviso to "House in safe, secure setting, [and] make defendant available for evaluation by prison medical staff." (Id. Ex. G.) She was initially admitted as an inmate to the Philadelphia Prison System in the Philadelphia Industrial Corrections Center ("PICC"), but, on June 23, 2004, was transferred to the transitional mental health unit of PICC. (Id. Ex. H.) While in the mental health unit, several evaluations and psychiatric examinations were performed on Plaintiff by various medical and behavioral health staff. (Id. Ex. I.) On June 29, 2004, Plaintiff underwent a

---

[1] Notably, the parties dispute when the protective order was obtained and served on Plaintiff. Defendants claim that it was served on Plaintiff at 10:00 a.m. the day of her arrest. (Defs'. Mem. Supp. Mot. Summ. J. 4, ¶ 2, Ex. B.) Plaintiff, however, asserts that the protection from abuse order was not received by Ms. Chandler until after Plaintiff had been detained in jail. (Pl's. Mem. Opp. Summ. J., Ex. 1 ¶ 7.)

court-ordered pretrial mental health evaluation by psychiatrist John S. O'Brien, II to determine if she was competent to stand trial on her pending charges. (Id.) Dr. O'Brien determined that Plaintiff was in need of treatment, but not severely mentally disabled. (Id.) He diagnosed her with bipolar affective disorder and found that, "while she understands the nature and object of proceedings against her, she is not able to participate and assist in her own defense." (Id. at Bates No. 29.) Ultimately, he concluded that Plaintiff was "incompetent to stand trial and 30 days of treatment [could] be reasonably certain to provide the patient with the capacity to stand trial." (Id. at Bates No. 15.)

On July 8, 2004, Judge Louis J. Presenza of the Philadelphia Court of Common Pleas involuntarily committed Plaintiff to thirty days of in-patient mental health treatment "which is the least restrictive setting appropriate for the patient . . . as a person incompetent to stand trial but not severely mentally disabled pursuant to the provisions of Section 402-B of the Mental Health Procedures Act of 1976." (Id. Ex. J.) Nonetheless, Plaintiff denies that she ever received proper medical treatment while in prison. Indeed, she claims that she was given only two brief meetings with a social worker and three brief sessions with a psychiatrist. (Pl's. Mem. Opp. Summ. J., Ex. 1 ¶¶ 40, 44.)

Although Plaintiff's mother posted bail for her on July 14, 2004, Plaintiff was not released until her court-ordered psychiatric evaluation was completed on July 21, 2004. (Defs.' Mem. Supp. Mot. S.J., Exs. L, M.) Plaintiff alleges that during her period of incarceration, she endured various abusive and inhumane conditions. At the prison, corrections officers continually asked if she wanted to have "hot sex" with the inmates and made sexually harassing remarks to her. (Pl's. Mem. Opp. Summ. J., Ex. 1 ¶ 12.) When she underwent her initial medical

3

examination, the nurse hurt her with the needle. (Id. ¶ 14.) Thereafter, she was taken to a cell and placed with an African-American female who kept screaming that she did not want to be with "a f—ing white girl." (Id. ¶ 16.) The cellmate attempted to initiate a physical confrontation with Plaintiff until the guards removed the cellmate. (Id. ¶¶ 17-18.) Plaintiff then remained in that cell for two nights and three days without once being permitted to leave the cell. (Id. ¶ 19.) During that time, the toilet backed up and was left overflowing and full of feces and urine for three continuous days. (Id. ¶¶ 20-21.) After her stay in that cell, she was placed in a new cell with a Muslim woman who threatened her, ordered her to clean the toilet and would slap her if she did not like what she did. (Id. ¶ 27-28.) Subsequently, Plaintiff was transferred, due to her inmate's abuse, and was moved into a cell with a schizophrenic who never took showers, smelled bad and did not talk at all. (Id. ¶ 29.) Generally, during her confinement, other inmates would perform sexually obscene actions in her presence and Plaintiff was rarely allowed to leave her cell. (Id. ¶¶ 30-31.) When she was permitted to take a shower, the stalls were dirty and there was no curtain blocking the view from the corrections officers. (Id. ¶ 34.) Further, she was subjected to mice, a cell mate who got her period but not given hygiene products, and an inmate with HIV who threatened to bite her. (Id. ¶¶ 35-37.)

Moreover, Plaintiff alleges that, despite her pleas, prison officials made no efforts to address either her physical or mental condition. (Id. ¶ 32.) She was not provided any of her necessary blood pressure medicine for the first three weeks, and was never given any of her prescribed insulin or medication for her diabetes. (Id.) Further, prison staff denied her requests for her psychotropic medicine that she had been taking before going to jail; she was given only Prozac at a non-therapeutic dosage. (Id. ¶ 33.) After the first three weeks, a court-appointed

psychiatrist advised that she be sent to a hospital for treatment since the prison environment was detrimental to her health, but this recommendation was ignored. (Id. ¶ 40.) In her last couple of weeks at the prison, she would have severe panic attacks and, when she asked for medical attention, the correctional officers told her that she would be put in solitary confinement because she was just trying to get out of being in the cell. (Id. ¶ 38.)

At the end of six weeks incarceration, Plaintiff was discharged from prison. (Id. ¶ 42.) Plaintiff began outpatient treatment at the Philmont Guidance Center on August 10, 2004. (Defs.' Mem. Supp. Mot. Summ. J., Ex. N.) On the same day, Plaintiff was deemed competent to stand trial on her pending criminal charges. (Id. Ex. O.) Her mental health physician from Philmont diagnosed her, two weeks later, with post-traumatic stress disorder. (Pl. Opp. Summ. J. ¶ 45.) On December 8, 2004, all charges against Plaintiff were dismissed for lack of prosecution, since the Commonwealth's witness failed to appear. (Id. Ex. P.)

On May 23, 2007, Plaintiff initiated a civil action in this Court under 42 U.S.C. § 1983, alleging violations of her First, Fourth, Eighth and Fourteenth Amendment rights by Defendants Warden John Doe, Officer Broaddus, Officer Wilson, the City of Philadelphia and prosecution assistant Marcy Bostwick. Specifically, Plaintiff asserted, under 42 U.S.C. § 1983, that the Defendants violated her Fourth Amendment right to be free from malicious prosecution, her First and Fourth Amendment rights to be free from unlawful arrests, her Eighth Amendment right to be free from cruel and unusual punishment and her Fourteenth Amendment right not to be denied due process of law. (Compl. ¶¶ 7-9.) On December 20, 2007, this Court granted Defendant Marcy Bostwick's motion to dismiss.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc., 998 F.2d 1224, 1230 (3d Cir.1993). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999).

### III.   DISCUSSION

Remaining Defendants City of Philadelphia, Police Officer Tyrone Broaddus, Jr. and Police Officer Alexander Wilson now move for summary judgment on two grounds. First, they allege that all of Plaintiff's claims are barred by Pennsylvania's two-year statute of limitations, which is applicable to the section 1983 claims. Second, they assert that even if the Court were to find Plaintiff's Complaint timely, her claims fail as a matter of law. As the Court finds merit to the statute of limitations argument, we do not reach any other contention.

Because 42 U.S.C. § 1983 does not contain a statute of limitations, courts look to 42 U.S.C. § 1988, which requires use of the statute of limitations for the state where the federal court sits, unless its application would conflict with the Constitution or with federal law. Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000). In Pennsylvania, the statute of limitations applicable to section 1983 suits is the two-year limitations period set forth for personal injury actions in 42 PA. CONS. STAT. ANN. § 5524; Montgomery v. DeSimone, 159 F.3d 120, 126 n.4 (3d Cir. 1998) (noting that courts should apply state statute of limitations applicable to personal injury torts). "It

is axiomatic that under federal law, which governs the accrual of section 1983 claims, 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" Montgomery, 159 F.3d at 126 (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).

In this case, Plaintiff's section 1983 causes of action for false arrest and false imprisonment arose on June 19, 2004, the day of her arrest and detention. Id. at 126 (false arrest and imprisonment claims arise at time of arrest and detention). Plaintiff's cause of action under the Eighth Amendment for her conditions of confinement arose, at the latest, on August 10, 2004, the day of her discharge from prison. Finally, Plaintiff's cause of action for malicious prosecution arose on December 8, 2004, the date that all charges against her were dismissed for lack of prosecution. Although Plaintiff had until June 19, 2006, August 10, 2006, and December 8, 2006, respectively, to file her civil action, she failed to do so until May 23, 2007.

Plaintiff now argues that (1) she was mentally incompetent and "not able to mobilize sufficient resources" to file this complaint, and (2) it was not until August of 2006 that she was able to remember and comprehend the events that transpired. (Pl's. Opp. Summ. J. 12.) Notably, however, the applicable Pennsylvania statute of limitations contains no provision that permits mental incompetency as grounds for tolling. 42 PA. CONS. STAT. ANN. § 5533; Lake, 232 F.3d at 366-67. Indeed, it is well-established, under Pennsylvania law, that insanity, including mental incompetency, does not toll the running of the statute of limitations. Davidson v. Brethren Mut. Ins. Co., Civ. A. No. 05-1929, 2007 WL 2007991, at *5 (M.D. Pa. Jul. 5, 2007) ("a party's mental incapacity does not toll the statute of limitations"); Baily v. Lewis, 763 F. Supp. 802, 808 (E.D. Pa. 1991) ( "[C]ourts applying Pennsylvania law have consistently stated

that the statute of limitations runs against persons under a disability, including one who is mentally incompetent."). Accordingly, Plaintiff's alleged diminished mental capacity does not bring her within the applicable statute of limitations.

Nonetheless, the Court's inquiry does not end at this juncture. In an effort to avoid this procedural obstacle, Plaintiff invokes both the discovery rule and the doctrine of equitable tolling. The Court considers each in turn.

### A. The Discovery Rule

"The discovery rule applies in cases where the injured party is unable to know that he is injured and to know what caused the injury, despite the exercise of reasonable diligence." Palmer v. City of Harrisburg, Civ. A. No. 07-4535, 2008 WL 1838632, at *3 (3d Cir. Apr. 25, 2008). In such a case, the statute of limitations does not begin to run until the person "discovers" the injury. Id. Importantly, "[f]or the statute of limitations to run . . . a plaintiff need not know the 'exact nature' of his injury, as long as it objectively appears that the plaintiff 'is reasonably charged with the knowledge that he has an injury caused by another.'" Mest v. Cabot Corp., 449 F.3d 502, 510-11 (3d Cir. 2006) (quoting Ackler v. Raymark Indus., Inc., 551 A.2d 291, 293 (Pa. Super. 1988)). In other words, "[t]he standard of reasonable diligence is an objective one and turns on the nature of the injury and whether it is latent." Palmer, 2008 WL 1838632, at *3. Notwithstanding the objective nature of this inquiry, it is "sufficiently flexible to take into account defects in a plaintiff's mental capacity." Id. at *3 n.4 (citing Miller v. Philadelphia Geriatric Center, 463 F.2d 266 (3d Cir. 2006). "Courts which apply the discovery rule to toll the statute of limitations often point to facts which are latent in nature. In such cases, plaintiffs did not know and could not know the nature of their injuries or who caused them until some time

after the actual injury occurred." Waldman v. Pediatric Servs. of Am., Inc., No. 97-7257, 1998 WL 770629 at *5-6 (E.D. Pa. Nov. 5, 1998) (citing cases). Although this analysis is factual in scope, thus normally making it a question for a jury, where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." Gaetano v. Bayer, Inc., Civ. A. No. 04-1812, 2007 WL 3334985, at *16 (W.D. Pa. Nov. 8, 2007) (quoting Fine v. Checcio, 870 A.2d 850, 858-59 (Pa. 2005)).

In the factually analogous, albeit unpublished, case of Getchy v. County of Northumberland, the plaintiff was a former juvenile inmate at a county adult correctional facility and claimed to have been sexually abused by adult inmates at the facility. 120 Fed. Appx. 895, 897 (3d Cir. 2005). Plaintiff alleged that he repressed memories of the assaults for an extended period of time. Id. Upon emergence of these memories, he filed a complaint against the county under 42 U.S.C. sections 1983 and 1985. The county moved to dismiss pursuant to a statute of limitations argument, and plaintiff countered by invoking the discovery rule. Id. at 898. Citing to the Pennsylvania Supreme Court case[2] of Dalyrymple v. Brown, 701 A.2d 164, 166 n.3 (Pa. 1997), the Third Circuit remarked that "[w]hile [plaintiff] may have repressed memories of the assaults, the Dalyrymple reasoning precludes us from using the repression as an excuse since it is not the case that 'no amount of vigilance' would have enabled [plaintiff] to uncover the injuries. . . . After all, [plaintiff] was surely aware of these as they were occurring . . . [and] this awareness must have persisted at least in the short term." Id. at 899. Accordingly, the Court declined to

---

[2] The court noted that where a federal action borrows a state statute of limitations, the application of the discovery rule is a question of state law. Id. at 898.

apply the discovery rule. Id.

Similarly, in Barren by Barren v. U.S., the plaintiff was in the military service and, during a tour of duty in Korea, began experiencing increasing amounts of nervousness and anxiety. 839 F.2d 987, 988 (3d Cir. 1988). He was transferred home and then medically discharged with instructions to seek care at a Veteran's Administration ("VA") hospital. Id. Although the plaintiff sought help at a VA hospital over the course of the next year and a half, his mental condition continued to worsen. Id. at 988-89. His family brought an action alleging medical malpractice against the VA in 1979, almost seven years after he first sought treatment, and the VA sought to dismiss the claims as time barred. Id. at 989. The district court determined that the plaintiff's diminished mental condition, which condition resulted from defendant's malpractice, was a factor which could be considered in assessing the reasonableness of his diligence in discovering the malpractice. Id. The Third Circuit, however, reversed, noting that "[a]lthough the VA's exacerbation of [plaintiff's] infirmity, and the causal relationship between this aggravation and plaintiff's inability to recognize his condition is a compelling reason to excuse his deficiency in failing to file his claim, . . . the rule cannot be subjectively applied." Id. at 992. The court concluded that "[a]llowing [plaintiff] to file later than an objectively reasonable person would be tantamount to ruling that a plaintiff's mental infirmity can extend the statute of limitations."[3] Id.; see also Waldman, 1998 WL 770629, at *5-6 (holding that where plaintiff's

---

[3] Notably, in Miller v. Philadelphia Geriatric Center, 463 F.3d 266, 274 (3d Cir. 2006), the Third Circuit distinguished Barren and carved out a "narrow equitable exception" to the discovery rule's objective standard for a plaintiff who was born into total mental incapacity and who never had any guardian appointed. Id. at 274-75 ("To reiterate, we are not dealing with a person who, like in Barren, was mentally ill but competent and then, because of the government's malpractice, progressed into total mental incapacity."). Plaintiff does not argue, and nothing in the facts presented to the Court suggests, that the case at bar would fall into this limited

11

family had salient facts to put them on notice of possible claim, discovery rule would not apply, despite plaintiff's mental incompetency).

In the case at bar, reasonable minds could not differ on the fact that Plaintiff should have been aware of the events involving her arrest and incarceration as they occurred. First, her alleged injuries were far from latent. In her affidavit, she stated that "everyday" she has flashbacks and "visually relive[s]" the experiences she went through at the prison. (Pl's. Mem. Supp. Opp. S.J., Ex. 1 ¶ 43.) Further, she indicated that it was the first time anyone in her family had experience with the criminal justice system and, thus, her experiences were "particularly traumatizing." (Id. ¶ 45.) Second, to the extent Plaintiff attempts to allege repressed memory of the events giving rise to this litigation – an argument that is far from clear from either Plaintiff's brief or her counsel's oral argument – such a claim is foreclosed by our jurisprudence. Finally, Plaintiff was deemed competent to stand trial as of August 10, 2004, and, in fact, did appear in court on December 8, 2004. (Defs.' Mem. Supp. Mot. Summ. J., Exs. N, P.) As such, while perhaps mentally impaired, she was not mentally incompetent. In short, Plaintiff stands hard-pressed to argue that, given both her level of education and the patent nature of the facts giving rise to her claim, no amount of diligence would have enabled her to discover the fact of her injuries or their cause prior to August of 2006.

### B. Equitable Tolling

Plaintiff's sole remaining avenue around the statute of limitations requires the Court to invoke its equitable tolling powers. Equitable tolling freezes "the statute of limitations from running when the date on which the claim accrued has already passed." Lake v. Arnold, 232

---

exception.

F.3d 360, 370 (3d Cir. 2000). The Third Circuit has cautioned that the doctrine of equitable tolling should be used warily "to guard against possible misuse," Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999), but such caution should not inhibit the court from using the doctrine to "prevent[] a party from profiting from its own wrongdoing." Lake, 232 F.3d at 370. Equitable tolling may be appropriate in three general scenarios: (1) when the defendant has actively misled the plaintiff with regard to the facts which make up plaintiff's cause of action; (2) when the plaintiff in some extraordinary way has been prevented from asserting her rights; or (3) when the plaintiff has timely asserted her rights in the wrong forum. Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1388 (3d Cir. 1994). In addition, the plaintiff must demonstrate that he or she "exercised reasonable diligence in investigating and bring the claims." Miller v. New Jersey Dep't. of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998) (quotations omitted). "Mere excusable neglect is not sufficient." Id. at 619.

Plaintiff's only recourse under the equitable tolling rules falls within the second enumerated scenario – an extraordinary circumstance preventing her from asserting her rights. The Third Circuit has held, however, that mental incompetence is not a *per se* justification for equitable tolling. Lake, 232 F.3d at 371. Rather, the alleged mental incompetence must have somehow affected the plaintiff's ability to timely file her action.[4] Nara v. Frank, 264 F.3d 310,

---

[4] For example, in Lake v. Arnold, the Third Circuit applied the equitable tolling doctrine, but noted the unusual nature of the facts before it. 232 F.3d at 371. In that matter, a mentally retarded woman sued her family and physicians for having sterilized her without her consent – an action taken at the behest of her guardian. Id. at 371-72. The court found that "[p]ermitting the tolling provisions of the state statute of limitations to bar her cause of action would frustrate the federal civil rights laws by barring a remedy to a protected person because the guardian, who under state law should have sought to vindicate that person, harmed her instead." Id. at 372. The

320 (3d Cir. 2001), overruled in part on other grounds, Carey v. Saffold, 536, U.S. 214, 122 S. Ct. 2134 (2002); United States v. Harris, 268 F. Supp. 2d 500, 506 (E.D. Pa. 2003) (a petitioner who seeks equitable tolling on this basis must show both "an inability to pursue one's legal rights" and "a nexus between the petitioner's mental condition and [his] inability to file a timely petition."). "A determination of mental incompetence which has affected the ability to make a timely filing . . . must be premised on the totality of the petitioner's circumstances." Graham v. Kyler, Civ. A. No. 01-1997, 2002 WL 32149019, at *4 (E.D. Pa. Oct. 31, 2002). While the Third Circuit has not enumerated specific factors to consider, other courts within this Circuit, considering this allegation in the context of habeas corpus cases, have set forth a list of pertinent considerations: "(1) was the petitioner adjudicated incompetent and, if so, when did the adjudication occur in relation to the . . . statutory period; (2) was the petitioner institutionalized for his mental impairment; (3) has the petitioner handled or assisted in other legal matters which required action during the federal limitations period; and (4) has the petitioner supported his allegations of impairment with extrinsic evidence such as evaluations and/or medications." Passmore v. Pennsylvania, Civ. A. No. 08-705, 2008 WL 2518108, at *3 (M.D. Pa. Jun. 19, 2008) (quotations omitted). It is clear that "[b]ald and unsupported claims of incompetency are insufficient to present a viable basis for equitable tolling." Pugh v. Mechling, Civ. A. No. 04-448, 2006 WL 931868, at *4 (M.D. Pa. Apr. 11, 2006).

Plaintiff's opposition to Defendants' motion for summary judgment relies entirely on two

---

Third Circuit emphasized, however, that it was "not equitably tolling Pennsylvania's statute of limitations solely because [plaintiff]'s mental incompetence prevented her from recognizing her injury when she was sterilized." Id. Instead, it tolled the statute "due to the failure of the guardian system." Id.

14

rather unpersuasive pieces of evidence. First, in her own undated affidavit, she states:

> Two weeks after being prison, I was given a new diagnosis with PTSD (Post Traumatic Stress Disorder). The symptoms are claustrophobic [sic], panic attacks, constant flashbacks, depression and a fear of going outside. I went through two years of psychotic depression during which I was completely immobilized. That is the reason that I did not take legal action sooner. I still suffer from P[T]SD to this day.

(Pl's. Mem. Supp. Opp. S.J., Ex. 1 ¶ 45.) Second, she submits a letter from psychiatrist Kenneth Kron, M.D., who indicated that Plaintiff had been under his care since August 10, 2004. The letter goes on to state:

> Just prior to seeing her, she was involved in an altercation in which the police were called. She was incarcerated, medications were taken from her and she received no medical care. When she was arrested she was in a Manic state and was unable to control her actions. Following her discharge she was unable to mobilize sufficient resources to deal with any aspects of her life. At this time she is having recall of events that occurred during her incarceration and is experiencing anxiety, which is traumatic for her and may justify a diagnosis of Post Traumatic Stress Disorder.

(Defs.' Mem. Supp. Mot. S.J., Ex. N.)

Guided by the applicable standards, the Court does not find that such evidence rises to the level of extraordinary circumstances necessary to justify equitable tolling. First, Plaintiff fails to supply any extrinsic medical records, evidence of institutionalization or records of medication to establish the severity of her mental impairment. Second, any evidence produced by Plaintiff shows only that she was mentally impaired, not mentally incompetent. Indeed, as noted above, on August 10, 2004, a prison psychiatrist expressly deemed her competent to stand trial, and Plaintiff did, in fact, stand trial in December of 2004. (Id. Ex. O.) Nothing in the vague and enigmatic letter from Dr. Kron either refutes that medical determination or suggests that Plaintiff

was mentally incapacitated.[5] Finally, Plaintiff fails to allege, let alone establish that she exercised reasonable diligence in investigating and bringing her claims, particularly in light of the fact that she possessed all relevant facts as of December of 2004, at the latest. To invoke equitable tolling in the face of bald and unsupported allegations of a limiting mental impairment would constitute an abuse of this Court's discretion.

## IV. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff's claims are barred by the applicable statute of limitations. Accordingly, summary judgment is granted on the entirety of her Complaint.

---

[5] Notably, at oral argument on this motion, on August 14, 2008, Plaintiff's counsel was given the opportunity to explain both Dr. Kron's statement that Plaintiff was "unable to mobilize sufficient resources to deal with any aspects of her life" and Plaintiff's own statement that "I went through two years of psychotic depression during which I was completely immobilized." Counsel offered no such explanation and simply conceded that the evidence was "thin."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON R. SULLIVAN : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| WARDEN JOHN DOE, OFFICER : | NO. 07-2092 |
| BROADDUS, OFFICER WILSON, : | |
| THE CITY OF PHILADELPHIA, : | |
| and MARCY BOSTWICK, : | |
| : | |
| Defendants. : | |

## ORDER

AND NOW, this 28th day of *August* 2008, upon consideration of the Motion of Defendants City of Philadelphia, Police Officer Tyrone Broaddus, Jr. avnd Police Officer Alexander Wilson for Summary Judgment (Doc. No. 13) and Plaintiff Sharon R. Sullivan's Response thereto (Doc. No. 14), and after hearing oral argument on the Motion, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.**

**JUDGMENT IS ENTERED** in favor of all Defendants and against Plaintiff. This case is closed.

BY THE COURT:

RONALD L. BUCKWALTER, S.J.